UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

Deborah A. Olmo-Claudio,

                            Debtor.
-----------------------------------------------------------x

Case No.: 8-16-71740-ast

Chapter 13

## MEMORANDUM OPINION REGARDING MODIFICATION OF SECURED CREDITOR'S RIGHTS UNDER A CHAPTER 13 PLAN

*Issues Presented*

The issues before the Court are: (1) whether a chapter 13 debtor may modify the rights of a mortgagee secured only by a security interest in debtor's principal residence where the mortgage matured prior to the petition date; and (2) if so, what is the appropriate interest rate that must be paid by the debtor over the plan term. Because the Court has determined that the rights of such a mortgage holder may be modified, it will hold an evidentiary hearing to set the appropriate interest rate.

## **JURISDICTION**

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This decision constitutes the Court's findings of fact and conclusions of law in accordance with Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

## **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

On April 21, 2016 (the "Petition Date"), Deborah A. Olmo-Claudio ("Debtor") filed a petition (the "Petition") for relief under chapter 13 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").[2] [dkt item 1] Marianne DeRosa was appointed the Chapter 13 Trustee of Debtor's bankruptcy case (the "Trustee").

According to Debtor's Petition and Schedules, she asserts a fee simple ownership interest in a property located at 57 Corbin Ave., Patchogue, New York, which she also claims as her principal residence (the "Premises"). [dkt item 1] She lists M&T Bank on her Schedule D as the holder of the first mortgage on the Premises in the amount of $56,000, and values the Premises at $200,000 in her Schedules A/B and D. [dkt item 1] Debtor does not assert a homestead exemption in her Schedule C, and elected to claim federal exemptions. [dkt item 1]

On the Petition Date, Debtor also filed a proposed chapter 13 plan (the "Plan"), which provides, among other things, that M&T Bank as the holder of an allowed secured claim would retain its lien and be paid $56,000 in arrears outside the Plan. [dkt item 2]

On May 6, 2016, M&T Bank, as servicer for the State of New York Mortgage Agency ("SONYMA"), filed a proof of claim (the "POC") in the secured amount of $85,534.97 (the "SONYMA Claim"). [POC 2-1] SONYMA's secured claim is based on a loan originally made by The Williamsburgh Savings Bank ("WSB") to Lifetime Development Corp. ("Lifetime") on April 11, 1985 in the principal amount of $112,500. The loan was evidenced by a note ("Note") and secured by a mortgage ("Mortgage") against the Premises. *See POC*. On August 28, 1985, WSB assigned the Mortgage to Bayside Federal Savings and Loan Association ("Bayside

---

[1] The factual background and procedural history are taken from the pleadings, exhibits and other documents submitted by the parties and the public docket in this case.
[2] Unless otherwise indicated, all statutory references are to the Bankruptcy Code.

Federal"). *See POC*. Pursuant to a Consolidation/Extension Agreement (the "Agreement") with Bayside Federal dated August 28, 1985, Debtor along with Jose R. Claudio and Louis A. Claudio assumed the obligations owed by Lifetime under the Note and Mortgage. On the same date, Bayside Federal assigned the Mortgage to SONYMA. *See POC*.

Under the Agreement, the Note matured on September 1, 2015. *See POC*. The Agreement also provided that the outstanding principal under the Note would bear interest of 10.2% per year beginning from the date of the Agreement until the full amount of the principal was paid. *See POC*.

On May 9, 2016, SONYMA filed an objection to confirmation of the Plan (the "First Objection"), asserting that it is owed $85,534.97 and the Plan does not provide for payment of the total debt owed to it by Debtor. *See First Objection*, at ¶¶ 3 (on first page), 5.[3] [dkt item 11]

On June 20, 2016, Debtor filed an Amended Chapter 13 Plan (the "Amended Plan") and on September 7, 2016, filed a Second Amended Chapter 13 Plan (the "Second Amended Plan"), under which Debtor proposed paying SONYMA $85,534.97 plus interest at an annual rate of 3.5% outside the plan. [dkt items 12, 13] On September 8, 2016, SONYMA filed an objection (the "Second Objection" and together with the First Objection, the "Objections") to the Second Amended Plan, arguing that Debtor impermissibly lowered the contractual interest rate from 10.2% to 3.5% in violation of § 1322(b)(2).[4] [dkt item 14]

On October 17, 2016, the Trustee filed a motion to dismiss Debtor's bankruptcy case (the "Motion to Dismiss"), arguing that the Second Amended Plan was inadequately funded for the full payment to all secured creditors as required under § 1325(a)(5). [dkt item 15]

---

[3] The First Objection contains two paragraphs numbered "3", one on each page of the First Objection.
[4] While not pertinent to the issue at hand, SONYMA also objected on the grounds that the Second Amended Plan failed to provide for Debtor's ongoing payments of hazard insurance.

3

On February 13, 2017, Debtor filed an affirmation by her counsel in further support of the Second Amended Plan and in reply to the Objections (the "Affirmation in Support"). [dkt item 17] Debtor does not dispute that the Note matured on September 1, 2015 and that SONYMA's claim represents the entire amount due thereunder. *Affirmation in Support*, at ¶¶ 4, 7. Debtor, however, contends that her chapter 13 plan may provide for amounts due under a matured loan to be paid over the plan term at a reduced rate of interest rather than at the higher contractual rate of interest, relying upon the Supreme Court's decision in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S. Ct. 1951, 1952, 158 L. Ed. 2d 787 (2004). Debtor now contends that an interest rate of 5.25% (comprised of a prime rate of 3.75% plus an additional 1.5%) is appropriate. *Affirmation in Support*, at ¶¶ 8, 12. Debtor asserts that she is able to make all of her plan payments at a 5.25% interest rate.

On February 27, 2017, SONYMA filed a memorandum of law ("MOL") in further support of its Objections. [dkt item 18] SONYMA again argues that the loan documents expressly provide for an interest rate of 10.2% and that any modification of the interest rate violates § 1322(b)(2).

On May 24, 2017, Debtor further amended her chapter 13 plan (the "Third Amended Plan"), providing for the payment of arrears owed to SONYMA in the amount of $85,534.97 without addressing the interest to be paid under the plan . [dkt item 21]

The Motion to Dismiss and confirmation of Debtor's chapter 13 plan have been adjourned pending the Court's decision on the issues of modification of the SONYMA Claim and the applicable rate of interest. The Court now issues its decision as follows.

## DISCUSSION

At issue is the interplay and scope of three subsections of the Bankruptcy Code. Debtor relies on §§ 1322(c)(2) and 1325(a)(5) in order to modify the contractual rate of interest downward. SONYMA opposes any reduction to the interest rate, relying upon § 1322(b)(2).

This Court's analysis necessarily begins by looking to the language of the statute itself to determine if the statute is plain or ambiguous. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 649 (2012); *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004); *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989); *see also In re Miller*, 462 B.R. 421, 429 (Bankr. E.D.N.Y. 2011). "[I]n determining plainness or ambiguity, courts are directed to look 'to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *In re Phillips*, 485 B.R. 53, 56 (Bankr. E.D.N.Y. 2012) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). "Courts are required to apply the plain meaning of a statute, unless the statute is ambiguous or applying the unambiguous plain meaning would yield an absurd result." *Id.* If the statutory language is clear, a court's analysis must end there. *Hartford Underwriters Ins. Co. v. Union Planters Bank, Nat'l Ass'n*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.").

### *SONYMA's Rights May be Modified*

As an initial matter, the Court determines whether SONYMA's rights as the holder of a claim secured only by Debtor's principal residence are entitled to protection from modification under a chapter 13 plan. Section 1322 generally protects holders of residential mortgages from having their rights modified under a chapter 13 plan:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> ….

> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

11 U.S.C. § 1322(b)(2). This Court has noted previously, "[t]his proscription, which has come to be known as the anti-modification provision of the Bankruptcy Code, gave rise to substantial litigation over the extent to which § 1322(b)(2) applies." *In re Addams*, 564 B.R. 458, 463 (Bankr. E.D.N.Y. 2017); *see Nobelman v. American Savings Bank*, 508 U.S. 324, 325-26, 332 (1993) (chapter 13 debtor cannot strip down a partially unsecured residential mortgage lien secured only by the debtor's principal residence); *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122 (2d Cir. 2001)(chapter 13 debtor could avoid a wholly unsecured second mortgage that encumbered a principal residence); *In re Wapshare*, 492 B.R. 211, 213 (Bankr. S.D.N.Y. 2013)(chapter 20 debtor may strip off a wholly unsecured second mortgage); *Miller*, 462 B.R. at 426-29 (same).

As the Supreme Court described in *Nobelman*, the secured creditor's "rights" are "reflected in the relevant mortgage instruments . . . . They include the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure. These are the rights that were 'bargained for by the mortgagor and the mortgagee,' and are rights protected from modification by § 1322(b)(2)." *Nobelman*, 508 U.S. at 329 (internal citations omitted); *see also In re Hubbell*, 496 B.R. 784, 788 (Bankr. E.D.N.C. 2013) ("[a]bsent an exception, § 1322(b)(2) prohibits any modification that alters the nature, rate of interest or maturity date of a claim secured only by a security interest on real property serving as the debtor's principal residence.")

6

Here, there is no dispute that (1) the SONYMA Claim is a secured claim; (2) the SONYMA Claim is secured only by the Premises; and (3) the Premises is Debtor's principal residence. Thus, the SONYMA Claim is the type of claim that would generally fall within the protective scope of § 1322(b)(2) and would not be subject to modification, absent a statutory exception.

On the face of the statute, however, through use of the words "Subject to subsections (a) and (c) of this section" in § 1322(b)(2) and "notwithstanding subsection (b)(2)" in § 1322(c)(2), the Bankruptcy Code is clear and unambiguous that the prohibition against modifying a secured creditor's rights under § 1322(b)(2) is expressly subject to certain exceptions, two of which are found in § 1322(c):

> Notwithstanding subsection (b)(2) and applicable nonbankruptcy law –
>
> (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law; and
>
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c); *see In re Draper*, No. 15-34127, 2015 Bankr. LEXIS 3915, at *7 (Bankr. E.D. Va. Nov. 17, 2015) ("Subsection (c) of § 1322 of the Bankruptcy Code now sets forth a clear exception to the 'anti modification' provision contained in § 1322(b)(2)."); *First Union Mortg. Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 470-71 (B.A.P. 6th Cir. 1998) (§ 1322(c)(2) is the "exception to the exception"); *Federal National Mortg. Assoc. v. Griffin (In re Griffin)*, 489 B.R. 638, 641 (Bankr. D. Md. 2013); *Geller v. Grijalva (In re Grijalva)*, No. 11-bk-25386-EWH,

2012 Bankr. LEXIS 1355, at *5 (Bankr. D. Ariz. April 2, 2012) (finding prefatory word "notwithstanding" in § 1322(c)(2) to be notable).[5]

The SONYMA Note matured pre-petition. *See Affirmation in Support*, at ¶¶ 4, 7 (acknowledging that the Mortgage has matured); *MOL*, at p. 1 (maturity date is September 1, 2015). Thus, § 1322(b)(2) does not prohibit the modification of SONYMA's rights under Debtor's chapter 13 plan. *See In re Sanders*, 521 B.R. 739, 744 (Bankr. D. S.C. 2014); *In re Perry*, 235 B.R. 603, 608 (S.D. Tex. 1999) (noting that "courts consistently apply § 1322(c)(2) exclusively to claims that mature prior to or during the term of the Chapter 13 plan"); *Hurlburt v. Black (In re Hurlburt)*, No. 16-01964-5-SWH, 2017 Bankr. LEXIS 1534, at *8-9 (Bankr. E.D.N.C. June 7, 2017) (holding § 1322(c)(2) applies to cases where the loan matured before the bankruptcy filing or where the loan is set to mature before the plan term concludes); *Draper*, 2015 Bankr. LEXIS 3915, at *7; *In re Henning*, 420 B.R. 773, 786 (Bankr. W.D. Tenn. 2009); *In re Newberry*, No. 07-10170, 2007 Bankr. LEXIS 2351, at *4-5 (Bankr. D. Vt. July 10, 2007) (finding that a debt that matured prepetition falls within the purview of § 1322(c)(2)); *In re Lewis*, No. 03-12393, 2004 Bankr. LEXIS 1543, at *8 (Bankr. D. Kan. March 24, 2004); *In re Rowe*, 239 B.R. 44, 51 (Bankr. D. N.J. 1999). *Accord In re Sierra*, 560 B.R. 296 (Bankr. S.D. Tex. 2016) (denying confirmation because chapter 13 plan included an impermissible modification under § 1322(c)(2) of a mortgage scheduled to mature after the final payment under the plan was due).

In spite of the statutory exception, SONYMA argues that § 1322(c)(2) is not applicable because its claim is oversecured; the Court finds this argument unavailing.[6] Subsection 1322(c)(2)

---

[5] It is worth noting that, although not germane here, one of the references in the § 1322(c)(1) exception to § 1322(b)(2) is to § 1322(b)(5) which, in general terms, allows for the curing of pre-petition defaults through a chapter 13 plan for mortgages which mature after the date of the last plan payment. *See In re Bagne*, 219 B.R. 272, 276 (Bankr. E.D. Cal. 1998).

[6] Because the parties agree that SONYMA's claim is oversecured, the Court need not address whether bifurcation of a creditor's claim is permitted under § 1322(c)(2). *In re Merhi*, 518 B.R. 705, 711 (Bankr. E.D.N.Y. 2014).

contains no language limiting its application to undersecured or oversecured claims; the only qualifying language in § 1322(c)(2) regarding the type of "secured" claim that may be modified is a claim "secured only by a security interest in real property that is the debtor's principal residence."[7]  *See e.g.*, *In re Kulik*, No. 16-12176-BKC-AJC, 2017 Bankr. LEXIS 746 (Bankr. S.D. Fla. March 1, 2017) (holding that § 1322(c)(2) permitted a modification of the interest rate from contract rate to a *Till* rate ); *In re Smith*, No. 12-07447-8-SWH, 2013 Bankr. LEXIS 3443 (Bankr. E.D.N.C. Aug. 23, 2013) (holding that interest rate of mortgage was subject to § 1322(c)(2) modification); *In re Terrell*, No. 99-70556-JTL, 1999 Bankr. LEXIS 2114, at *4-5 (Bankr. M.D. Ga. Aug. 20, 1999) (same); *Bagne*, 219 B.R. 272 (same). *See also In re Martinez*, No. 17-11559, 2017 Bankr. LEXIS 2081, at *5 (Bankr. S.D. Fla. July 25, 2017) (determining motion to value is not proper procedural device to raise plan interest rate but agreeing rate could be modified under § 1322(c)(2)).

Thus, while an oversecured claim secured only by the debtor's residence which matured pre-petition may be modified by paying the loan balance over the life of the plan, any proposed modification must comply with § 1325(a)(5).  *See Kulik*, 2017 Bankr. LEXIS 746; *Henning*, 420 B.R. at 787; *Newberry*, 2007 Bankr. LEXIS 2351, at *5 (debtor may modify the terms of a mortgage provided the treatment of creditor's claim complies with § 1325(a)(5)); *Bagne*, 219 B.R. at 277; *In re Brown*, 428 B.R. 672, 675 (Bankr. D. S.C. 2010).

Section 1325(a)(5) directs that "a bankruptcy court shall confirm a plan only if one of the following three requirements are satisfied: (1) the holder of such claim has accepted the plan; (2)

---

*Compare In re Paschen*, 296 F.3d 1203, 1209 (11th Cir. 2002) (permitting the bifurcation of a short-term mortgage under § 1322(c)(2)), *with In re Witt*, 113 F.3d 508, 514 (4th Cir. 1997) (rejecting bifurcation).
[7] Section 506(b) entitles an oversecured creditor to postpetition interest, which becomes part of the creditor's allowed secured claim. *Rake v. Wade*, 508 U.S. 464, 471, 113 S. Ct. 2187, 2191–92, 124 L.Ed.2d 424 (1993) (interest is "part of the oversecured claim under § 506(b)"); *In re P.G. Realty Co.*, 220 B.R. 773, 777 (Bankr. E.D.N.Y. 1998) ("The interest allowed under § 506(b) accrues from the date the petition is filed until the effective date of the plan of reorganization.")

the debtor's payments to the creditor comply with certain standards and the creditor retains its lien; or (3) the debtor surrenders the property securing such claim to such holder." *In re Coughlin*, 568 B.R. 461, 467-68 (Bankr. E.D.N.Y. 2017); *see AmeriCredit Fin. Servs., Inc. v. Tompkins*, 604 F.3d 753, 756 (2d Cir. 2010); *see also HSBC Bank USA, N.A. v. Zair*, 550 B.R. 188, 192 (E.D.N.Y. 2016); *Newberry*, 2007 Bankr. LEXIS 2351, at *6-7.

Here, SONYMA has not consented to or otherwise accepted Debtor's chapter 13 plan, so § 1325(a)(5)(A) is not satisfied. Debtor has not proposed to surrender the Premises to SONYMA; as such, § 1325(a)(5)(C) is not satisfied. Thus, Debtor must meet the three basic requirements of § 1325(a)(5)(B) in order to confirm her chapter 13 plan; the secured creditor must retain its lien until paid in full; the payments must be in equal installments; and the total amount of payments must have a present value of not less than the allowed amount of the claim.[8] The only issue here is the interest rate that would render the payment stream over time equal to the allowed amount of the claim at the plan effective date.

### *What Interest Rate is SONYMA Entitled to?*

The Supreme Court directly addressed this issue in its seminal decision in *Till v. SCS Credit Corp.*, in which the Court examined four distinct approaches to determine an appropriate rate of

---

[8] As to secured mortgage claim, § 1325(a)(5)(B) requires:
(i) the plan provides that—
    (I) the holder of such claim retain the lien securing such claim until the earlier of—
        (aa) the payment of the underlying debt determined under nonbankruptcy law; or
        (bb) discharge under section 1328; and
    (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
(iii) if—
    (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts[.]

interest for purposes of § 1325(a)(5)(B). The Court ultimately held that the proper calculation of the interest rate follows a formula approach, explaining that:

> Taking its cue from ordinary lending practices, the approach begins by looking to the national prime rate, reported daily in the press, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default. Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the prime rate accordingly. The appropriate size of that risk adjustment depends, of course, on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan.

*Till*, 541 U.S. at 478-79 (internal footnote omitted). The Court did not establish a specific adjustment for risk, but noted that "other courts generally approved risk adjustments of 1% to 3%." *Till*, 541 U.S. at 480-81; *see In re Martinez*, 409 B.R. 35, 40 (Bankr. S.D.N.Y. 2009) ("The *Till* Court did not define how to compute the risk adjustment."). The Court added that the risk adjustment should be "high enough to compensate the creditor for its risk but not so high as to doom the plan." *Till*, 541 U.S. at 480-81. *Till*, therefore, sets the stage for determining the interest rate required to ensure the mortgagee receives the value of its allowed claim as of the effective date of the plan.

Debtor has proposed a variety of possible interest rates; her Second Amended Plan proposes 3.5% but in her Affirmation in Support proposes 5.25%; her Third Amended Plan is silent on a rate. The rate of interest to be applied may be pivotal to determining whether Debtor will succeed in confirming a chapter 13 plan. *Till* provides the following instructions to courts:

> The court must therefore hold a hearing at which the debtor and any creditors may present evidence about the appropriate risk adjustment. Some of this evidence will be included in the debtor's bankruptcy filings, however, so the debtor and creditors may not incur significant additional expense. Moreover, starting from a

> concededly low estimate and adjusting *upward* places the evidentiary burden squarely on the creditors, who are likely to have readier access to any information absent from the debtor's filing (such as evidence about the "liquidity of the collateral market[.]"). Finally, many of the factors relevant to the adjustment fall squarely within the bankruptcy court's area of expertise.

*Till*, 541 U.S. at 479 (internal citation omitted) (emphasis in original).  In keeping with *Till*, this Court will conduct an evidentiary hearing to be scheduled by a separate order of this Court, and will direct, in advance of such a hearing, that Debtor file a plan that expresses the interest rate she proposes.

## CONCLUSION

For the reasons stated above, SONYMA's Objections are overruled.  Debtor's plan may provide for full payment of the SONYMA Claim under the Note and Mortgage at a modified interest rate over the term of a plan; a separate order will be issued scheduling an evidentiary hearing for the parties to present evidence in accordance with *Till*.



Dated: August 30, 2017　　　　　　　　　　　　　　　　　　_____
      Central Islip, New York　　　　　　　　　　　　　　　　　　　　　**Alan S. Trust**
                                                                         **United States Bankruptcy Judge**